SMITH v SINAI HOSPITAL OF DETROIT

Docket No. 85834. Submitted March 11, 1986, at Detroit. Decided June 17, 1986.

Plaintiff, Della Smith, filed a complaint in the Wayne Circuit Court on June 6, 1983, against Sinai Hospital of Detroit, several of its staff physicians and others alleging medical malpractice in their care of plaintiff after she gave birth on June 8, 1981. The complaint also contained several "John Doe" allegations, as at that time plaintiff was not certain that she had named all the responsible parties. After further investigation, plaintiff discovered the involvement of Edward Bartholomew, M.D., and Anesthesiologist Service, P.C., in the alleged malpractice. With the permission of the trial court, Henry J. Szymanski, J., plaintiff filed an amended complaint on September 27, 1984, adding Dr. Bartholomew and Anesthesiologist Service, P.C., as defendants. On May 31, 1985, a motion for accelerated judgment/summary disposition by Dr. Bartholomew and Anesthesiologist Service, P.C., was heard. The trial court agreed that plaintiff's claims were barred by the expiration of the period of limitations and granted defendants' motion on June 4, 1985. Plaintiff appeals from the order for accelerated judgment. *Held:*

1. The trial court acted correctly in hearing defendants' motion for accelerated judgment despite the defendants' failure to seek a rehearing on the trial court's summary denial of defendants' previous motion for accelerated judgment/summary disposition on the same issue.

2. There was no violation of MCR 2.116(B)(2) as a result of the fact that the hearing on the motion for accelerated judgment was held less than twenty-eight days after the motion was filed.

3. The trial court did not err in holding as a matter of law that the period of limitations for medical malpractice had expired before defendants were added as named parties.

4. The latest date on which plaintiff could possibly be held to

REFERENCES

Am Jur 2d, Limitations of Actions §§ 146 *et seq.,* §§ 487, 488.
Am Jur 2d, Motions, Rules, and Orders §§ 22-28.
Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 316-322.

have discovered the existence of her claim is June 6, 1983, and defendants were not added until September 27, 1984, more than six months later. Therefore, plaintiff's claim was barred as a matter of law.

5. The six-month "discovery rule," MCL 600.5805(4), does not apply to situations where the negligent act is known, but the identity of the defendant is unknown.

6. A defendant cannot be penalized for the alleged fraudulent acts of third parties in concealing the defendant's identity where the defendant played no part in such acts of concealment.

Affirmed.

1. MOTIONS AND ORDERS — REHEARINGS — COURT RULES.

The Michigan Court Rule regarding motions for rehearing or reconsideration provides a trial court with some guidance on when it may wish to deny motions for a rehearing; the rule does not prevent a trial court from exercising its discretion if it wants to give a second chance to a motion it has previously denied (MCR 2.119[F][3]).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — COURT RULES.

The section of the Michigan Court Rule regarding summary disposition which states that "a party asserting a claim shall not notice the motion for hearing until at least twenty-eight days after the opposing party was served with the pleading stating the claim" governs plaintiffs who wish to move for immediate summary disposition upon the filing of a complaint; it does not apply to defendants who wish to move for summary disposition (MCR 2.116[B][2]).

3. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

The basic period of limitations applicable to a medical malpractice action is two years from the last date of treatment; an exception to the two-year limit based on situations where the alleged malpractice is not discovered as of the last day of treatment provides that an action may be commenced within the applicable period prescribed or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later (MCL 600.5805[4], 600.5838[2]; MSA 27A.5805[4], 27A.5838[2]).

4. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

A two-pronged test helps a court in determining when a plaintiff discovered, or should have discovered, a defendant's alleged medical malpractice; a plaintiff discovers malpractice when: (1) the act or omission of the defendant becomes known, and (2)

the plaintiff has reason to believe that the medical treatment either was improper or was performed in an improper manner.

5. LIMITATION OF ACTIONS — QUESTIONS OF LAW.

The issue of whether a claim was brought within the applicable limitation period is a question of law within the exclusive province of the trial court where the undisputed facts reveal that a claim is barred by the statute of limitations.

6. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — ACCELERATED JUDGMENTS — DISCOVERY RULE.

The granting of an accelerated judgment in a medical malpractice action is improper where material factual disputes exist regarding the discovery of the alleged malpractice; the six-month "discovery rule," which applies to situations where the alleged malpractice is not discovered as of the last day of treatment and provides that an action may be commenced within the applicable period prescribed or within six months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later, does not apply to situations where the negligent act is known, but the identity of the defendant is unknown (MCL 600.5838[2]; MSA 27A.5838[2]).

7. LIMITATION OF ACTIONS — FRAUDULENT CONCEALMENT.

The statute which extends the limitation period for bringing a malpractice action in the event of fraudulent concealment is aimed at preventing actions which prevent a plaintiff from discovering the identity of defendants (MCL 600.5855; MSA 27A.5855).

8. LIMITATION OF ACTIONS — FRAUDULENT CONCEALMENT.

A defendant cannot be penalized for the fraudulent acts of third parties in concealing the defendant's identity where the defendant played no part in such acts of concealment.

*Bushnell, Gage, Doctoroff & Reizen* (by *Mark E. Reizen* and *Kathleen A. Stibich*), for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier* (by *Charles F. Glass* and *Charles D. Brown*), for Edward G. Bartholomew, M.D., and Anesthesiologist Service, P.C.

Before: BRONSON, P.J., and R. B. BURNS and J. E. TOWNSEND,* JJ.

PER CURIAM. On June 6, 1983, plaintiff, Della Smith, filed a complaint against Sinai Hospital of Detroit, several of its staff physicians and others alleging medical malpractice in their care of plaintiff after she gave birth on June 8, 1981. The complaint also contained several "John Doe" allegations, as at that time plaintiff was not certain she had named all the responsible parties. After further investigation, plaintiff discovered the involvement of appellees, Edward Bartholomew, M.D., and Anesthesiologist Service, P.C., in the alleged malpractice. Upon receiving permission of the trial court, plaintiff filed an amended complaint on September 27, 1984, adding the appellees as defendants. On May 31, 1985, defendants'[1] motion for accelerated judgment/summary disposition pursuant to MCR 2.116(C)(7), formerly GCR 1963, 116.1(5), alleging that plaintiff's claims were barred by the expiration of the period of limitation, was heard. The trial court granted the motion on June 4, 1985. Plaintiff now appeals and we affirm.

On June 7, 1981, plaintiff checked into Sinai Hospital for the delivery of her baby. Plaintiff, who was twenty-seven years old at the time, had a history of ruptured membranes, an intestinal bypass in 1976, and had gained seventy pounds as a result of this pregnancy. At 4 P.M. that day, plaintiff went into labor, but it was not until the following day that plaintiff was taken to the delivery room and administered a spinal anesthetic by defendant Bartholomew. At 11:35 A.M. on June 8,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Unless otherwise indicated, "defendants" will refer to appellees only.

1981, plaintiff gave birth to a seven pound, twelve ounce baby girl under a midline episiotomy,[2] with the episiotomy being immediately repaired. Plaintiff was then taken to the recovery room, and her obstetrician, Dr. Leach, issued the necessary postpartum treatment orders, one of which was that no enemas were to be administered to plaintiff.

Later that day, around 3 P.M., plaintiff began to experience pain in her rectal area and icepacks were applied. At midnight, more icepacks were applied and an analgesic was administered. On June 9, around 6 A.M., plaintiff had a low grade fever and at 9 A.M., contrary to Dr. Leach's instructions, a Fleets enema was administered to plaintiff. The next morning, after plaintiff still had a fever and pain, a Foley catheter[3] was inserted. The doctors diagnosed plaintiff as suffering from endometritis[4] and started plaintiff on antibiotics. Several days later, on June 12, plaintiff's temperature had returned to normal, although the Foley catheter was still inserted.

On June 13, 1981, plaintiff complained that she had not had a bowel movement since she gave birth, though she finally had one late that night. Quite soon thereafter, plaintiff began to experience burning urination and when she was discharged on June 15, she had a 99.4-degree temperature. The following day, plaintiff checked into New Grace Hospital, complaining of pain and a fever. Doctors there diagnosed her as suffering from endometritis, a disrupted episiotomy which had become infected, and a disrupted sphincter muscle which resulted in rectal incontinence. She was

---

[2] A surgical procedure involving the cutting of the vulva to prevent tearing of the vagina as the newborn child passes through.

[3] A *Foley catheter holds its position in the urethra by a small balloon.*

[4] Endometritis is the inflammation of the membrane which lines the interior of the uterus.

discharged nine days later and told that, when her infection totally subsided, she would need surgery to correct the disrupted episiotomy and torn sphincter muscle. After going through seven months of fecal incontinence, in January of 1982 plaintiff spent one month in a hospital to have her sphincter muscle repaired. According to plaintiff's complaint, the medical problems were the result of various negligent acts by Sinai Hospital and her attending physicians, and more specifically defendant Bartholomew, whom plaintiff alleges is the doctor who countermanded Dr. Leach's orders and authorized an enema for plaintiff.

Plaintiff began the discovery process after filing her original complaint, submitting interrogatories to all named defendants in the fall of 1983. Plaintiff also examined the relevant Sinai Hospital records but, because of the illegibility of certain signatures, was unable to identify the doctor who ordered plaintiff's enema. Finally, when Sinai Hospital's answers to interrogatories were filed on June 19, 1984, its response to question 45(c) clearly stated that defendant Bartholomew was the physician who wrote the order for plaintiff's enema.

Defendants were served the amended complaint on October 2, 1984. Defendants requested and were granted an extension of time in which to file a responsive pleading, and on November 7, 1984, defendants filed motions for summary judgment and accelerated judgment. Defendants subsequently withdrew the motion for summary judgment and a hearing on the motion for accelerated judgment was scheduled for December 17, 1984. However, because of the unavailability of Circuit Court Judge Henry J. Szymanski, that hearing was adjourned and some time in early January of 1985, Judge Szymanski dismissed the motion praecipe.

In early March, defendants re-praeciped their accelerated judgment motion, but, before completion of the refiling, plaintiff noticed the default of defendants as defendants had not yet filed a responsive pleading. In April, a hearing was held on the default, which was set aside by the trial court with $500 costs assessed against defendants. At that same time, defendants brought up their accelerated judgment motion, but the trial court, angered at defendants' delays, refused to hear the motion and summarily denied it. On May 17, 1985, defendants resubmitted their motion for accelerated judgment, which was heard and granted by the trial court on May 31, 1985, on the grounds that the two-year period of limitation had expired before defendants were added as parties to plaintiff's suit.

On appeal, plaintiff claims that the trial court erred in hearing defendants' motion for accelerated judgment when defendants failed to seek a rehearing on the trial court's summary denial of a previous motion for accelerated judgment/summary disposition on the same issue.

MCR 2.119(F)(3) states:

> Generally, *and without restricting the discretion of the court,* a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [Emphasis added.]

The emphasized portion of the court rule clearly illustrates the flaw with plaintiff's argument, mainly that this provision is in no way mandatory.

If a trial court wants to give a "second chance" to a motion it has previously denied, it has every right to do so, and this court rule does nothing to prevent this exercise of discretion. All this rule does is provide the trial court with some guidance on when it may wish to deny motions for rehearing.

The trial court acted correctly in hearing defendants' motion for accelerated judgment. In April of 1985, when the trial court denied defendants' motion for accelerated judgment, it did not exactly rule based on the motion's merits.

Plaintiff's second claim is that the hearing on the motion for accelerated judgment was held less than twenty-eight days after the motion was filed, violating MCR 2.116(B)(2), formerly GCR 1963, 117.1:

> A motion under this rule may be filed at any time consistent with subrule (D), but a *party asserting a claim* shall not notice the motion for hearing until at least 28 days after the opposing party was served with the pleading stating the claim. [Emphasis added.]

The flaw with this position is that plaintiff has misconstrued the meaning of this specific provision. MCR 2.116(B)(2) does not apply to defendants who wish to move for summary disposition; it governs plaintiffs who wish to move for immediate summary disposition upon the filing of a complaint, hence the words "a party asserting a claim" in MCR 2.116(B)(2).

Plaintiff also claims the trial court erred in holding that the period of limitation for medical malpractice had expired before defendants were added as named parties to the instant litigation.

The trial court did not err. In a medical mal-

practice action, the basic period of limitation is two years from the last date of treatment. MCL 600.5805(4); MSA 27A.5805(4). Plaintiff relies upon an exception to this two-year limit based on situations where the alleged malpractice is not discovered as of the last day of treatment:

> An action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred. [MCL 600.5838(2); MSA 27A.5838(2).]

In reaching the determination as to when a plaintiff discovers or should have discovered malpractice, a two-step test is employed:

> A two-prong test helps a court in determining when a plaintiff discovered, or should have discovered, a defendant's alleged malpractice. A plaintiff discovers malpractice when: (1) the act or omission of the defendant becomes known; and (2) the plaintiff has reason to believe that the medical treatment either was improper or was performed in an improper manner. [*Adkins v Annapolis Hospital,* 116 Mich App 558, 565; 323 NW2d 482 (1982), aff'd 420 Mich 87; 360 NW2d 150 (1984).]

Where the undisputed facts reveal that a claim is barred by the statute of limitations, the issue is

a question of law within the exclusive province of the trial court. *Adkins, supra,* p 566; *Tonegatto v Budak,* 112 Mich App 575; 316 NW2d 262 (1982); *Jackson v Vincent,* 97 Mich App 568, 576; 296 NW2d 104 (1980); *Leyson v Krause,* 92 Mich App 759, 765; 285 NW2d 451 (1979).

In the instant case, there are two possible dates when plaintiff could be held to have discovered defendants' malpractice. First, it could be argued that plaintiff discovered the alleged malpractice when she was diagnosed at New Grace Hospital on June 16, 1981, after her stay at Sinai Hospital. Plaintiff testified in her deposition:

> *Q.* (by *Mr. Mitseff*): Was any doctor or medical person at New Grace Hospital critical of the physicians at Sinai Hospital?
> *A.* Like I said, the only thing they said is whoever messed her up, you have to take her back over there. Why would they let me come out of the hospital with my angus [sic] ripped like that, and all messed up like that. Why did they let me out in the first place. That was the only thing they said, kept saying that.

Second, it could be argued that plaintiff discovered her claim on June 6, 1983, when she filed her original complaint. As the complaint clearly illustrates, plaintiff at that point knew of all the specific acts of negligence that occurred; at the most, all she did not know was the identity of the exact parties involved. Indeed, this is the *latest* plaintiff could possibly be held to have discovered the existence of her claim, as it is ludicrous to believe that a plaintiff is not aware of the existence of a claim when such claim has been filed in court by that plaintiff. Therefore, because the *latest* possible date of discovery is June 6, 1983, and defendants were not added until September

27, 1984, more than six months later, as a matter of law plaintiff's claim was barred.

Plaintiff forwards two arguments in an attempt to avoid the above conclusion. First, plaintiff claims that because the identity of the defendants was not discovered until June of 1984, when she received Sinai Hospital's answers to interrogatories, the six-month time period did not start until that point. This position is without merit, however, as it is contrary to the well-established principle that the six-month "discovery rule" does not apply to situations where the negligent act is known, but the identity of the defendant is unknown:

> Plaintiff also argues that the motion for accelerated judgment was improperly granted because factual questions existed as to whether she could have discovered the identity and involvement of the defendants sooner. Accelerated judgment is improper where material factual disputes exist regarding discovery of the alleged malpractice. *Jackson v Vincent,* 97 Mich App 568, 572; 296 NW2d 104 (1980). However, the "time of discovery" rule relates to *the discovery of the asserted malpractice and not the discovery of defendant's identity or involvement.* [*Lefever v American Red Cross,* 108 Mich App 69, 74; 310 NW2d 278 (1981). Emphasis added.]

Plaintiff's second argument is that because defendants fraudulently concealed their participation in the malpractice at issue, the period of limitation is two years from the date plaintiff discovered the identity of defendants. See MCL 600.5855; MSA 27A.5855. The bulk of plaintiff's argument here revolves around an inconsistency, admitted by defendants, in defendants' position since the filing of the amended complaint. In an affidavit dated November 6, 1984, defendant Bartholomew denied playing any part in plaintiff's treatment other

than providing anesthesiology services. Then on May 31, 1985, defense counsel admitted to the trial court that defendant Bartholomew did sign the enema authorization order:

*Mr. Glass:* Your Honor, the Request for Admissions do ask us, specifically, that question. We did not answer them knowing that they would be deemed admitted because Doctor Bartholomew clearly signed that order. And, that once he saw that order, he well knew that he was the attorney or the physician who had signed the particular order.

There are two major flaws with plaintiff's second position which make it unconvincing. First, for the most part it deals with acts done by defendants after they were named in the suit. As such, the fraudulent concealment statute does not apply, as it is aimed at preventing actions which prevent a plaintiff from discovering the identity of defendants:

"The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know, pursuant to the rule hereinbefore stated (*i.e.,* by the exercise of ordinary diligence)." [*Weast v Duffie,* 272 Mich 534, 539; 262 NW 401 (1935), quoting 37 CJ, p 976.]

Second, whatever concealment which allegedly occurred before the filing of the amended complaint and which was alleged in the amended complaint seems to be directed to the other party-defendants in this action:

85. Further, that these Defendants, or some of them, intentionally and fraudulently concealed from Plaintiff the fact that there was present a disruption of the repair of a fourth degree extension of the episiotomy, such concealment effected by employment of artifice, device, misstatement or misrepresentations planned to prevent inquiry or escape investigation, and hinder acquirement of information disclosing a right of action.

Since there is no allegation that defendants had any role in the episiotomy or the disruption of such being diagnosed or disclosed to plaintiff,[5] plaintiff's basic claim apparently is that the other parties in this action attempted to conceal the identity of defendants, and that the statute of limitations should be tolled as to defendants as a result. As with her first argument as to fraudulent concealment, this position is contrary to law, which clearly states that a defendant cannot be penalized for the fraudulent acts of third parties in concealing the defendant's identity where the defendant played no part. *Stoneman v Collier,* 94 Mich App 187, 192; 288 NW2d 405 (1979).

Affirmed. Costs to defendants.

[5] Defendant Bartholomew merely ordered the enema for plaintiff.