ROGERS, Circuit Judge.
This diversity action arises from the horrific abduction, rape, and murder of Janet Chandler at the hands of the employees of defendant Wackenhut Corporation in 1979. Janet’s murder remained unsolved until 2006, when one of the perpetrators confessed. Plaintiff James Chandler, Janet’s father, brought this action for negligent hiring and supervision against Wackenhut in 2008. The district court dismissed the action as untimely and James appeals. There is no question that the facts underlying this case shock the conscience. However, the dismissal was proper because this action was filed outside Michigan’s limitations period, Wack-enhut did not fraudulently conceal the action, and Michigan has abrogated both the common law discovery rule and extrastatu-tory equitable tolling in the statute-of-limitations context.
I.
In October 1978, the workers at a chemical plant in Holland, Michigan went on strike. The chemical plant hired Wacken-hut to provide security to protect the plant’s property and its nonstriking workers. R. 30 at 3. As a result, approximately seventy out-of-town Wackenhut security guards became temporary residents of the Blue Mill Inn motel, where Janet Chandler worked as the overnight front desk clerk. Id. Sexual relationships allegedly formed between motel employees and the security guards, resulting in jealously directed at Janet. Id. at 3-4. Several guards and motel employees conspired to “teach Janet Chandler a lesson,” by abducting her and assaulting her both sexually and physically. Id. at 4. On January 31, 1979, the conspirators handcuffed and abducted Janet. They brought Janet to the temporary residence of Arthur Paiva, a Wackenhut supervisor, where Janet was raped and murdered. The conspirators deposited Janet’s body forty miles from the crime scene. Id. 4-7.
After Janet’s murder, Paiva conspired with other guards to conceal the crime by making false police reports, lying during police interviews, and intimidating witnesses. Id. at 13-15. James Nelson, another Wackenhut guard, purposely misled police by falsely reporting that he had spoken to Janet by phone and overheard the abduction. Id. at 17.
During the investigation, Wackenhut allegedly: (1) maintained the corporate mot *427 to, “I know nothing, see nothing, and speak only in kind words”; (2) created the expectation “that a scandal was not to be attached to the company name”; (3) actively promoted a code of silence; and (4) directed Paiva and Nelson to secrete themselves to avoid media attention. Id. at 16-17.
Janet’s murder went unsolved for twenty-seven years, until 2006, when a former Wackenhut security guard confessed. Six people were convicted of either first- or second-degree murder, five of whom were Wackenhut employees.
On June 2, 2008, James Chandler was appointed personal representative of Janet’s estate. On December 17, 2008, James sued Wackenhut for negligent hiring and negligent supervision. James alleged that Wackenhut and its agents fraudulently concealed the action. In the alternative, James alleged that Wackenhut should be equitably estopped from asserting a statute-of-limitations defense. The district court dismissed the action as untimely because Michigan’s fraudulent concealment statute does not permit third party acts to extend the limitations period against a defendant. Chandler v. Wackenhut Corp., No. 08-cv-1197, 2010 WL 307908, at *5-7 (W.D.Mich. Jan.19, 2010). The district court found that Wackenhut’s own acts constituted “mere silence,” which does not constitute fraudulent concealment. Id. at 7. The district court held that Michigan’s doctrine of equitable estoppel was eliminated by Trentadue v. Buckler Lawn Sprinkler, 479 Mich. 378, 738 N.W.2d 664, 680 (Mich.2007), and declined to impute Paiva’s actions to Wackenhut because Paiva was acting outside the scope of his authority. Chandler, 2010 WL 307908 at *8-12. James filed this timely appeal.
II.
A. Michigan’s Fraudulent Concealment Statute
James’s claims are untimely because he filed them outside of the applicable Michigan limitations period. In Michigan, a plaintiff must file an action “to recover damages for the death of a person” within three years of the claim’s accrual. Mich Comp. Laws § 600.5805(10). The claim accrued on the date of Janet’s murder, January 31, 1979. See id. at § 600.5827. However, when the decedent has died before the original limitations period has run, the decedent’s “personal representative” may commence the action no later than “3 years after the period of limitations has run.” Id. at § 600.5852. As Janet’s personal representative, James could have filed the action no later than January 31, 1985.
The limitations period was not tolled because Wackenhut’s alleged silence did not trigger Michigan’s fraudulent concealment statute, Mich. Comp. Laws § 600.5855. Section 600.5855 tolls the limitations period if “a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable.” Id. These protections are triggered by affirmative acts or misrepresentations; “mere silence on the part of the defendant is not enough.”[1] Draws v. Levin, 332 Mich. 447, *428 52 N.W.2d 180, 183 (1952) (quoting Dowse v. Gaynor, 155 Mich. 38, 118 N.W. 615, 617 (1908)). James claims that Wackenhut fraudulently concealed the action by: (1) maintaining a motto of “I know nothing, see nothing, and speak only kind words”; (2) telling employees that “a scandal was not to be attached to the company name”; (3) actively promoting a code of silence; (4) and directing two perpetrators to secrete themselves to avoid media scrutiny. Appellant Br. 16-18. James describes Wackenhut’s motto and desire to avoid scandal as an “omerta” or a “code of silence.” Appellant Br. at 17. However, Michigan courts have indicated that such a code of silence does not constitute fraudulent concealment. See Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit, 264 Mich.App. 632, 692 N.W.2d 398, 406-7 (2004). Further, requiring the two security guards to secrete themselves in a hotel room was tantamount to maintaining the company’s silence. Although it is suspicious that Wackenhut directed the two primary perpetrators to remain silent, there is no allegation that the company engaged in coercion or any other like acts.[2] Instead, Wackenhut’s actions were the manifestation of the code of silence.
Paiva’s and Nelson’s conduct did not trigger the fraudulent concealment statute against Wackenhut. “The provisions of [the fraudulent concealment] section cannot be extended ... to concealments made by persons other than those sought to be charged in the action.” Stevenson v. Robinson, 39 Mich. 160, 160 (Mich.1878). Because the fraudulent concealment statute is designed to punish fraud, the statute’s purpose would not be served by punishing a defendant for the wrongful acts of a third party. Stoneman v. Collier, 94 Mich. App. 187, 288 N.W.2d 405, 407 (1979). Here, Paiva and Nelson were acting outside the scope of their employment when they concealed the crime; therefore, they were third parties. In light of this Stevenson rule, the limitations period for an action against Wackenhut is not tolled by the fraudulent actions of Paiva and Nelson.
Contrary to James’s contentions, subsequent amendments to the fraudulent concealment statute have not abrogated the Stevenson rule. The statute was first amended to address International Union United Automobile Workers of America v. Wood, 337 Mich. 8, 59 N.W.2d 60, 62-63 (1953). In Wood, the Michigan Supreme Court held that the concealment of a defendant’s identity, as opposed to concealing a “cause of action,” did not trigger the fraudulent concealment statute. In 1954, the Michigan legislature responded by amending the statute:
If any person, who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action, [or conceal the identity of any party thereto,] from the knowledge of the person entitled thereto, the action may be commenced at any time within 2 years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter.
Vega v. Briggs Mfg. Co., 341 Mich. 218, 67 N.W.2d 81, 84 (1954) (quoting P.A.1954, No., 49) (amended language bracketed and bolded). This amendment squarely addressed the holding in Wood and did not, as James contends, address the Stevenson rule. As a later court found, “[t]here is no showing that the [1954] amendment in any way changed the previously established rule that concealment by one other than *429 the one sought to be charged is not within the prohibition of the statute.” Stoneman, 288 N.W.2d at 407.[3]
The statute was again amended in 1961 to address deficient drafting identified by the Michigan Supreme Court in Ross v. Fisher, 352 Mich. 555, 90 N.W.2d 483, 484-485 (1958). In Ross, the court noted that the 1954 amendment created a disconnect between the statute’s purpose and its “pay-off’ clause. Id. Although concealment of a party’s identity now was mentioned in the statute, the amendment failed to toll the limitations period pending the discovery of the identity of the liable party. Id. To remedy this inconsistency, the legislature amended the statute in 1961 to its current form:
If [a] person who is [or may be] liable [for any claim] fraudulently conceal[s the existence of the claim] or the identity of any [person who is liable for the claim] from the knowledge of the person entitled [to sue on the claim], the action may be commenced at any time within 2 years after the person who is entitled to bring the [action] discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim], although the action would otherwise be barred by the period of limitations.
Mich. Comp. Laws § 600.5855 (amended language bracketed and bolded). These amendments fix the “pay-off’ clause and make various other semantic clarifications. James argues that the substitution of the word “claim” for the word “action” in the first lines of the statute abrogates Stevenson. Appellant Br. 37-38. Although the words have different meanings,[4] it is a stretch to infer that this substitution reflects a legislative intent to discard the Stevenson rule. James points to nothing in the legislative history or subsequent Michigan decisions to support his argument. More likely, the legislature wanted to clarify that concealment of a single claim, rather than of an entire cause of action, was sufficient to trigger the statute.
Subsequent Michigan opinions have continued to apply the Stevenson rule notwithstanding the amendments. See, e.g., Stoneman, 288 N.W.2d at 406; Smith v. Sinai Hosp. of Detroit, 152 Mich.App. 716, 394 N.W.2d 82, 87-88 (1986). In Stone-man, the Michigan Court of Appeals declined to toll the limitations period against General Motors where a lawyer for an unaffiliated car insurance company fraudulently concealed GM’s liability. 288 N.W.2d at 406. The court reaffirmed the Stevenson rule, reasoning that it would be inequitable to punish GM for the wrongful acts of a third party’s lawyer.[5] Id. at 407.
The Stoneman court did not overturn Stevenson, as James argues. In Stoneman, the court stated, “[i]t would be inequitable in the present case to punish *430 General Motors for acts of concealment engaged in by a third party.” Stoneman, 288 N.W.2d at 407. James focuses on the term “inequitable,” and argues that its use means that the Stoneman court conducted an ad hoc balancing rather than implementing a per se rule. However, when read in context, the quoted statement is merely a reiteration of the purpose underlying the Stevenson rule and not a new test. Further, even if the Michigan Court of Appeals intended to set forth a new test, this court sitting in diversity must follow the precedent of the Michigan Supreme Court.
The Michigan Court of Appeals again applied the Stevenson rule in Smith v. Sinai Hospital, 394 N.W.2d at 88. In Smith, a woman was injured by the malpractice of defendants during her labor and delivery. Id. at 84-85. The woman argued that the statute of limitations should be tolled because the hospital had fraudulently concealed the identity of an anesthesiologist who had countermanded a doctor’s orders, causing the injury. Id. at 88. The court rejected this, stating that “this position is contrary to law, which clearly states that a defendant cannot be penalized for the fraudulent acts of third parties in concealing the defendant’s identity where the defendant played no part.” Id. (citing Stoneman, 288 N.W.2d at 405).
B. Common Law Discovery Rule
James cannot rely on the common law discovery rule because it no longer exists in Michigan. See Trentadue v. Gorton, 479 Mich. 378, 738 N.W.2d 664 (2007). The Trentadue court, faced with a civil claim arising from a cold-case rape-murder similar to that perpetrated against Janet Chandler, held that Michigan’s limitations provisions abrogated the common law discovery rule. Id. at 671-672. Although the provisions do not explicitly address the common law discovery rule, the Trentadue court held that Michigan legislature intended to occupy the field by enacting the comprehensive limitations provisions. Id. at 671. These provisions tolled the limitations period in certain circumstances, such as fraudulent concealment, but did not adopt a general discovery rule similar to the common law rule. Therefore, the court reasoned, “an extrastatutory discovery rule” would contravene legislative intent. Id. at 672.
The Michigan Supreme Court appears unlikely to overturn this rule. James concedes that Trentadue abolished the common law discovery rule, but argued in his brief to us that the Michigan Supreme Court was poised to overturn Trentadue in Colaianni v. Stuart Frankel Development Corp., Inc., 488 Mich. 1019, 791 N.W.2d 720 (2010). In Colaianni, the Michigan Supreme Court granted leave to appeal to “address whether [Trentadue] was correctly decided.” Colaianni v. Stuart Frankel Dev. Corp., Inc., 485 Mich. 1070, 777 N.W.2d 410, 410 (2010). However, on December 29, 2010, the court dismissed Colaianni pursuant to a signed stipulation by the parties. Colaianni, 791 N.W.2d at 720. Although the Michigan Supreme Court might have been revisited the Tren-tadue rule, there is no indication that the court intended to change course. There are no other reasons for us not to apply the Trentadue holding.
C. Equitable Estoppel
Michigan has also eliminated equitable estoppel in the fraudulent concealment context. The Trentadue court declined to equitably toll the limitations period because:
if courts are free to cast aside a plain statute in the name of equity ... then immeasurable damage will be caused to the separation of powers mandated by our Constitution. Statutes lose their meaning if an aggrieved party need only *431 convince a willing judge to rewrite the statute under the name of equity.
Trentadue, 738 N.W.2d at 680 (internal quotations and citations omitted). The court held that equitable tolling is only available if “no controlling statute negated the application of equity....” Id. In doing so, the Trentadue court “rejected the argument that equitable estoppel should have tolled the running of the statute of limitations.” Bearup v. Gen. Motors Corp., Nos. 272654, 272666, 2009 WL 249456, at *6 (Mich.Ct.App. Feb.3, 2009).[5] Here, as in Trentadue, James cannot rely on equitable estoppel because the fraudulent concealment statute controls and negates the application of equity.
Michigan courts have applied equitable estoppel as a way past the statute-of-limitations defense, but not in cases involving fraudulent concealment. Instead, the courts have applied the doctrine in the statute-of-limitations context only to cases involving a defendant who led the plaintiff to believe that the limitations period would not be enforced.[6] For example, in Aastad v. Edwards, No. 293101, 2010 WL 4679699, at *2 (Mich.Ct.App. Nov.18, 2010), the court weighed the estoppel factors and ultimately found that a plaintiff did not justifiably rely on the belief that the limitations period would not be enforced. See also Siuda v. Tobin, No. 285618, 2009 WL 3110817, at *2 (Mich.Ct.App. Sept.29, 2009). This is consistent with Trentadue because, in contrast to the fraudulent eon-cealment context, in these cases there was “no controlling statute [that] negated the application of equity....” Trentadue, 738 N.W.2d at 680.
James attempts to distinguish equitable tolling from equitable estoppel, but in the statute-of-limitations context this argument is unpersuasive. According to James, equitable estoppel bars a defendant from profiting from his own misconduct whereas equitable tolling merely delays application of the statute. As James notes, “[tjolling operates on the statute of limitations; equitable estoppel operates on the party.” Appellant Br. 49 (quoting Major League Baseball v. Morsani, 790 So.2d 1071, 1077 (Fla.2001)). However, in the statute-of-limitations context, the practical effect is that application of equitable estop-pel, just like tolling, would cause “courts ... to cast aside a plain statute in the name of equity.” Trentadue, 738 N.W.2d at 680. If faced with equitable estoppel, the Trentadue court would most likely find the fraudulent concealment statute bars equitable estoppel.
Finally, even if equitable estoppel existed in the statute-of-limitations context, James has not alleged circumstances sufficient to justify estopping Wackenhut. As discussed above, James alleges at most that Wackenhut was silent about the circumstances of Janet’s murder, but “[science or inaction alone is insufficient to invoke estoppel absent a legal or equitable *432 duty to disclose.” Tenneco Inc. v. Amerisure Mut. Ins. Co., 281 Mich.App. 429, 446, 761 N.W.2d 846 (Mich.Ct.App.2008). James has not alleged Wackenhut had any such duty; therefore, estoppel would not be triggered.
Further, the actions of Paiva and Nelson would not trigger the equitable estoppel bar against Wackenhut. Neither Paiva’s nor Nelson’s appalling conduct could be said to be within “the course of employment”; therefore, their fraudulent acts cannot be imputed to the corporation. MCA Fin. Corp. v. Grant Thornton LLP, 263 Mich.App. 152, 687 N.W.2d 850, 857 (2004). Accordingly, Paiva’s and Nelson’s acts cannot estop Wackenhut.
III.
While Michigan law arguably leads to an unfortunate result in this case, we are bound to follow Michigan law because federal jurisdiction is based on diversity of citizenship. The district court’s order dismissing James’s action is affirmed.

. Wackenhut argues there are three elements to establish fraudulent concealment, relying on Evans v. Pearson Enterprises, Inc., 434 F.3d 839, 850 (6th Cir.2006). Although Evans evaluated fraudulent concealment under Michigan law, the court incorrectly referred to the elements from Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir.1975), a case that involved tolling under the Clayton act. However, contrary to James's contention, this error is of no consequence because both the federal standard and the Michigan require proof of wrongful concealment by a defendant, and not a third party.

. There could be an entirely innocent explanation: Wackenhut may have simply wanted to keep its name out of a media frenzy surrounding the murder. However, the company’s motive is not relevant to the present analysis.

. James argues that the precise issue "was almost reached” by the Michigan Supreme Court in Vega, 67 N.W.2d at 84. Appellant Br. 33. However, the Vega court did not consider, or even mention, whether the concealment by one party tolled the statute of limitations against another. See Vega, 67 N.W.2d at 84. Instead, the court found that the 1954 amendment was not applicable because the cause of action accrued before the amendment. Id.

. A "claim” is "a statement of the facts ... on which the pleader relies in stating the cause of action...." Mich. Ct. R. 2.111(B)(1). An "action" refers to the lawsuit, brought to remedy such claims. Id. at 2.101.

.James argues that Stoneman was wrongly decided because the court improperly focused on the wrong amendment and ignored Ross. However, as discussed above, neither the 1954 nor the 1961 amendment abrogated the Stevenson rule. The Stoneman court did not discuss Ross for good reason: the case has nothing to do with the Stevenson rule but instead discusses the inartful drafting of the 1954 amendment.

. James argues that Bearup in fact balanced the equities, which James contends indicates the test is an ad hoc balancing rather than a per se rule. Id. at *6. However, the Bearup court explicitly recognized equitable estoppel was no longer valid in the fraudulent concealment context, and was comparing the equities in Bearup to those in Trentadue to buttress this conclusion.

. The one exception to this appears to have arisen in the insurance context. In Albrecht v. State Farm Mutual Automobile Insurance Co., No. 289042, 2010 WL 2505894, at *3 (Mich.Ct.App. June 22, 2010), the court held that an insurance company might be equitably estopped from asserting a statute-of-limitations defense because of the negligence of its insurance agent. The insurance agent sent the plaintiff the wrong form, which the plaintiff only discovered after the limitations period had expired. With little analysis, and no reference to Trentadue, the court remanded for further factual development to determine whether the insurance agent’s acts were negligent such as to justify estoppel.