*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELE PRICE, also known as MICHELE BURKE,

UNPUBLISHED
June 20, 2019

Plaintiff-Appellant/Cross-Appellee,

v

No. 340734
Wayne Circuit Court
LC No. 15-002017-NH

ELENI CALLIS, D.D.S.,

Defendant-Appellee/Cross-Appellant,

and

JERRY A. ARONOFF, D.D.S.,

Defendant-Appellee.

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

In this dental malpractice action, plaintiff-appellant/cross-appellee Michelle Price (plaintiff) appeals as of right the trial court's order granting a directed verdict in favor of defendant-appellee/cross-appellant Eleni Callis, DDS (Dr. Callis), and defendant-appellee Jerry A. Aronoff, DDS (Dr. Aronoff).[1] Callis cross-appeals by delayed leave granted[2] the trial court's earlier order denying Callis's motion for summary disposition pursuant to MCR 2.116(C)(7). We affirm the trial court's denial of summary disposition, but we reverse its subsequent grant of a directed verdict and remand for a new trial.

---

[1] Drs. Callis and Aronoff are referred to collectively as "defendants."

[2] *Price v Callis*, unpublished order of the Court of Appeals, entered January 12, 2018 (Docket No. 341311).

# I. BACKGROUND

On October 26, 2010, Dr. Callis performed a root canal on one of plaintiff's teeth; specifically, tooth 19. Plaintiff alleged that Dr. Callis broke several drill bits during the procedure, and although she initially experienced only discomfort, she began experiencing more intense pain around the tooth. In 2011, plaintiff attempted to return to Dr. Callis, but because Dr. Callis no longer worked at the practice, she saw Dr. Aronoff. When Dr. Aronoff also left the practice, another doctor in the office took an x-ray and referred plaintiff to an endodontist.[3] In December of 2013, plaintiff consulted with Dr. Jeffrey Dzingle, an endodontist, who informed plaintiff that x-rays of her tooth showed "blatantly obvious" metal pieces in her root that had been left from the root canal. Dr. Dzingle was able to remove two of the three metal pieces from plaintiff's tooth. Plaintiff commenced the instant action, alleging that Dr. Callis committed malpractice by improperly performing the root canal, and Dr. Aronoff fraudulently concealed Dr. Callis's error and thereby prevented plaintiff from discovering the cause of her pain earlier.

Following the filing of plaintiff's complaint, Dr. Callis moved for summary disposition on the basis that plaintiff's complaint was untimely and that plaintiff had failed to properly plead facts in support of fraudulent concealment. The trial court disagreed, finding that plaintiff did, in fact, sufficiently plead fraudulent concealment, and that the issue of whether fraudulent concealment actually occurred was a question for the jury. At the close of plaintiff's case-in-chief, defendants jointly moved for a directed verdict, contending that plaintiff had failed to produce expert testimony to establish the appropriate standard of care or any breach of that standard of care. The trial court agreed and granted the directed verdict. This appeal followed.

## II. DR. CALLIS'S MOTION FOR SUMMARY DISPOSITION

Dr. Callis contends that, irrespective of the directed verdict, the trial court erred when it denied Dr. Callis's motion for summary disposition on the basis that plaintiff's complaint was untimely. It is not disputed that plaintiff's claim is subject to the two-year limitations period for medical malpractice claims, and she did not commence this action until more than two years after the root canal. Dr. Callis contends that the trial court erroneously permitted the action to proceed on the basis of Dr. Aronoff's alleged fraudulent concealment of Dr. Callis's error. We disagree.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(7), where the claim is allegedly barred, the trial court must accept as true the contents of the complaint, unless they are contradicted by documentary evidence submitted by the moving party. *Id*. at 119. "In reviewing the record to determine if defendant was entitled to judgment as a matter of law, we consider all affidavits, pleadings, and other documentary evidence submitted by the parties and

---

[3] Endodontics is a specialty in dentistry specifically pertaining to root canal treatment and surgery.

construe the pleadings in plaintiff's favor." *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 638; 692 NW2d 398 (2004). "Absent a disputed question of fact, the determination of whether a cause of action is barred by a statute of limitation is a question of law that this Court reviews de novo." *Id*. We also review questions of statutory interpretation de novo. *Stanton v City of Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002).

Generally, medical malpractice claims must be filed within two years of the date the claim began to accrue. MCL 600.5805(8). A medical malpractice claim begins to accrue when the treating physician "discontinues serving the plaintiff in a professional or psuedoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838(1). Fraudulent concealment is an exception to that general rule, and, in relevant part, it allows a plaintiff to commence an action "at any time within 2 years after [the plaintiff] discovers, or should have discovered, the existence of the claim." MCL 600.5855. Fraudulent concealment must be established through "affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Frank v Linkner*, 500 Mich 133, 148; 894 NW2d 574 (2017) (quotation omitted). "Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Doe*, 264 Mich App at 642 (quotation omitted). "The plaintiff must plead in the complaint the acts or misrepresentations that compromised the fraudulent concealment." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996).

Dr. Callis contends that plaintiff did not allege that anything had been concealed at all. We disagree. Plaintiff alleged that Dr. Callis told plaintiff that drill bits were breaking—even so much as showing plaintiff the bits during the root canal—but failed to mention any broken files. After taking an x-ray of plaintiff's tooth, Dr. Callis informed plaintiff that everything "looked good." Dr. Callis argues that fraudulent concealment requires affirmative conduct beyond mere silence. However, a treating medical professional conducting and evaluating a diagnostic test, and then reassuring a patient that there were no concerns, *is* affirmative conduct. Under the circumstances, stating that the x-ray "looked good" would effectively communicate that no improper foreign matter had been left behind. At a summary disposition stage of proceedings, we must presume that Dr. Callis did leave pieces of broken tooling in plaintiff's tooth and falsely informed plaintiff that she did not. The trial court properly found that plaintiff had sufficiently pleaded and provided evidence of fraudulent concealment.

Next, Dr. Callis contends that any alleged fraudulent concealment on the part of Dr. Aronoff is irrelevant to a claim against Dr. Callis. Dr. Callis argues that "the fraudulent concealment act does not operate against persons who do not participate in the concealment." *Stoneman v Collier*, 94 Mich App 187, 192; 288 NW2d 405 (1979); see also *Smith v Sinai Hosp of Detroit*, 152 Mich App 716, 728; 394 NW2d 82 (1986) ("no allegation that [the] defendants had any role" in the concealment, and the "plaintiff's basic claim [was] that the *other parties* in [the] action attempted to conceal the identity of [the] defendants"). However, plaintiff alleged that Dr. Callis personally attempted to conceal that she had left broken metal pieces in plaintiff's mouth, and she also alleged that Dr. Aronoff attempted to do so on behalf of Dr. Callis because of their professional relationship. Plaintiff did not allege concealment on the part of a third party, but on the part of defendants themselves. Because plaintiff additionally alleged that Dr. Aronoff is also liable for professional negligence, his alleged concealment falls within the plain

scope of the statute, which explicitly provides that fraudulent concealment exists where "a person who is or may be liable for *any* claim . . . conceals the existence of the claim *or the identity of any person who is liable for the claim…*" MCL 600.5855 (emphasis added).

Finally, Dr. Callis contends that plaintiff cannot utilize the fraudulent concealment statute because plaintiff should have discovered the existence of her claim more than two years before she filed her complaint. Specifically, Dr. Callis contends that plaintiff should have discovered the existence of her claim no later than November 2011, when plaintiff had already seen Dr. Aronoff twice about intensifying pain around tooth 19 following the root canal. We disagree.

Under MCL 600.5855, a plaintiff is charged with discovering any claim that ought to be discovered with the exercise of reasonable diligence. *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 45 n 2; 698 NW2d 900 (2005). The discovery period "begins to run when, on the basis of objective facts, the plaintiff should have known of a possible cause of action." *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 222; 561 NW2d 843 (1997) (discussing MCL 600.5838a(2), which contains similar "should have discovered" language to MCL 600.5855). By analogy to MCL 600.5838a(2), the limitations period under MCL 600.5855 therefore begins to run when a reasonable person would objectively be "aware of an injury and its possible cause," although the person must also "possess at least some minimum level of information that, when viewed in its totality, suggests a nexus between the injury and the negligent act." *Id*. at 222-224, 226.

Plaintiff indicated that she first saw Dr. Callis because of pain around tooth 19. Plaintiff stated that, following her root canal, plaintiff's pain was slightly alleviated; however, it later intensified over time. Plaintiff was reassured by both Drs. Aronoff and Callis that everything on her x-rays looked good, and she was specifically told by Dr. Aronoff in response to her continuing pain that "root canals just sometimes don't take." Objectively, there is no evidence to suggest that plaintiff should have known that her pain might have been the result of a botched procedure. Plaintiff was experiencing pain before the root canal and she was experiencing pain—albeit occasionally heightened pain—after. It was not until December 11, 2013, that plaintiff was informed by an endodontist of the pieces of metal lodged in the root of her tooth that had been left during the root canal. Only at that point was there objective information to suggest that plaintiff might have a cause of action, and accordingly, plaintiff exercised reasonable diligence for the purpose of the fraudulent concealment statute.

Because plaintiff sufficiently pleaded fraudulent concealment and provided an adequate showing that she exercised reasonable diligence, the trial court did not err in denying defendant's motion for summary disposition and allowing the case to go to trial.

### III. DEFENDANTS' MOTION FOR A DIRECTED VERDICT

As noted, after the case proceeded to a jury trial and through plaintiff's case-in-chief, defendants obtained a dismissal by directed verdict on the grounds that plaintiff failed to provide expert testimony setting forth the requisite standard of care. Plaintiff contends that the court (1) erred in prohibiting plaintiff's endodontist from testifying as an expert witness and establishing the standard of care attributed to a general dentist performing a root canal, (2) erred in failing to

consider defendants' own testimony to be expert testimony regarding the standard of care, and (3) erred in declining to reopen the proofs to allow plaintiff to move to qualify defendants as expert witnesses. We agree with plaintiff in part, and we agree that the trial court erred in granting the directed verdict.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

This Court "review[s] de novo a trial court's ruling regarding a motion for a directed verdict, viewing the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Elezovic v Ford Motor Co*, 472 Mich 408, 418; 697 NW2d 851 (2005). "[T]he decision whether to admit or exclude evidence is reviewed for an abuse of discretion." *Id*. at 419. However, preliminary legal determinations of admissibility are reviewed de novo as a question of law, and it is necessarily an abuse of discretion to admit or exclude evidence on the basis of an error of law. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). A motion to reopen the proofs is reviewed for an abuse of discretion, keeping in mind that denying such a motion will likely be an abuse of discretion if there will be no surprise or prejudice to the opposing party. See *Bonner v Ames*, 356 Mich 537, 541; 97 NW2d 87 (1959); *Serijanian v Assoc Material & Supply Co*, 7 Mich App 275, 279-281; 151 NW2d 345 (1967).

In a medical malpractice claim, a plaintiff must establish, among other things, the applicable standard of care, and that the defendant breached that standard of care. *Elher*, 499 Mich at 21. Usually, both elements must be established through expert testimony. *Id*. However, expert testimony may not necessarily be required to establish the breach, if there is sufficient evidence in the record to prove the breach even to an ordinary layperson. *Id*. at 21-22; see also *Broz v Plante & Moran, PLLC*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 340381, slip op at p 6). Expert testimony is only unavoidably mandatory for establishing the standard of care itself, which "refers to what a professional must or must not do." *Id*. at ___ (slip op at p 5). Furthermore, no rule exists precluding a defendant in a medical malpractice case from supplying the necessary expert testimony establishing the standard of care. See *Rice v Jaskolski*, 412 Mich 206, 212-213; 313 NW2d 893 (1981). "The proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955[,] and MCL 600.2169." *Clerk v Chippewa County War Mem Hosp*, 477 Mich 1067, 1067; 729 NW2d 221 (2007).

## B. EXPERT TESTIMONY BY DR. DZINGLE

Plaintiff argues that Dr. Dzingle should have been qualified as an expert witness for the purpose of establishing the requisite standard of care, and as an expert witness generally. We disagree with the former, but we agree with the latter.

Expert testimony regarding the standard of care is governed by MCL 600.2169(1)(c), which provides, in pertinent part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

-5-

* * *

(c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

According to the biography of Dr. Dzingle submitted by plaintiff, Dr. Dzingle practiced as a general dentist from 2005 through 2008, whereupon he ceased practicing as a dentist and returned to school. After returning to school, he graduated in 2011 with a specialty in endodontics. The root canal at issue was performed on October 26, 2010. Consequently, "during the year preceeding the date of the occurrence that is the basis for the claim or action," Dr. Dzingle did not devote a majority of his professional time to active clinical practice as a general practitioner. See *Rock v Crocker*, 499 Mich 247, 265-267; 884 NW2d 227 (2016). Consequently, the trial court correctly determined that as a matter of law, Dr. Dzingle was precluded from providing expert testimony establishing the standard of care applicable to defendants.

In contrast, we are concerned by the trial court's holding that Dr. Dzingle was precluded from testifying as an expert witness altogether. We cannot find any reason in the record why Dr. Dzingle could not testify as an expert endodontist, or why he could not testify as an expert regarding his own expert experience performing root canals. MRE 702; *Mulholland v DEC Int'l Corp*, 432 Mich 395, 401-411; 443 NW2d 340 (1989). We note that the record is unclear as to why the trial court made that ruling. According to the parties, no transcript of the relevant proceedings could be obtained, and the parties' stipulated statement of what transpired during those proceedings is not helpful. The trial court may have had proper discretionary reasons for refusing to qualify Dr. Dzingle as an expert, and defendants would certainly be entitled upon request to a cautionary instruction regarding Dr. Dzingle's inability to provide testimony regarding defendants' standard of care. However, we cannot find any reason in the record why Dr. Dzingle was precluded as a matter of law from otherwise being qualified as an expert. *If* the trial court's ruling was premised on the misapprehension that Dr. Dzingle could not testify as an expert at all, the trial court abused its discretion. Because we reverse the trial court's grant of directed verdict, we need not speculate further regarding the trial court's reasoning, nor do we need to address defendants' argument that any error was harmless.

## C. REOPENING PROOFS

Plaintiff alternatively argues that the trial court should have permitted her to reopen the proofs to qualify defendants as expert witnesses for the purpose of their testimonies regarding the standard of care. We agree.

As noted above, establishing the applicable standard of care in a medical malpractice action may be achieved through expert testimony from the defendants themselves. *Rice*, 412 Mich at 212-213. The trial court does not appear to have misapprehended that legal principle. Furthermore, the trial court appears to have correctly concluded that defendants' testimony, if

they had been qualified as experts, would have amply established the applicable standard of care. Defendants cannot seriously contend that they would not have been qualifiable as experts in their own areas of practice. Furthermore, we do not believe that the simple act of qualifying them as experts would have been surprising or prejudicial to defendants. The trial court would have abused its discretion by denying plaintiff's request to reopen the proofs on the basis of any finding to the contrary.

Rather, the trial court denied plaintiff's request to reopen the proofs based on its conclusion that doing so would be futile. The trial court observed that defendants had not provided any testimony that they *breached* the standard of care, and reasonably disbelieved that any defendant would likely do so. However, the trial court does not appear to have correctly understood that the *breach* of the standard care may, under some circumstances, be established through non-expert testimony. *Elher*, 499 Mich at 21-22. Our review of the record leads us to conclude that the instant case is one of those circumstances. Defendants' testimony was replete with statements to the effect that it would be a violation of the standard of care *if* certain events did or did not take place. There was also evidence in the record that, if believed by the jury, could have reasonably allowed it to conclude that those violations had occurred. Consequently, defendants' testimony could establish the standard of care, and an expert witness specifically qualified under MCL 600.2169(1)(c) was not mandatory to establish a breach of that standard of care.

We conclude that the trial court erred by denying plaintiff's request to reopen the proofs for the sole purpose of qualifying defendants as expert witnesses. The trial court therefore erred in granting directed verdict in favor of defendants.

The trial court's denial of summary disposition is affirmed, the trial court's grant of directed verdict is reversed, and the matter is remanded for a new trial. We do not retain jurisdiction. Plaintiff, being the prevailing party in both the appeal and the cross-appeal, may tax costs. MCR 7.219(A).

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause