# STATE OF MICHIGAN

# COURT OF APPEALS

JOAN MILOSTAN,

Plaintiff-Appellant,

v

TROY INTERNAL MEDICINE, MARK ALLEN
SINKOFF, M.D., MICHAEL JOHN SIMPSON,
M.D., NEIL FRASER, M.D.,

Defendants-Appellees.

UNPUBLISHED
January 15, 2015

No. 317704
Oakland Circuit Court
LC No. 2012-126758-NH

Before: FORT HOOD, P.J., AND HOEKSTRA AND O'CONNELL, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff challenges the trial court's grant of summary disposition to defendant Dr. Neil Fraser, M.D., under MCR 2.116(C)(7) based on the expiration of the statute of limitations provided by MCL 600.5805(6). Because the applicable statute of limitations had expired, and the discovery rule contained in MCL 600.5828a(2) does not apply to plaintiff's discovery of Dr. Fraser's identity, we affirm the trial court's grant of summary disposition.

The basic facts in this case are largely undisputed. Defendants Dr. Mark Sinkoff, Dr. Michael Simpson, and Dr. Fraser are partners in Troy Internal Medicine. In 2009, plaintiff was 77 years old and a long time patient of Troy Internal Medicine, in particular, a patient of Dr. Sinkoff. At that time, among other medications, plaintiff took Coumadin, an anticoagulant. Toward the end of 2009, plaintiff successfully underwent microsurgical clipping of a brain aneurysm, following which she was discharged from the hospital on December 22, 2009 and she resumed taking Coumadin. According to the affidavit of merit supporting plaintiff's complaint, given plaintiff's medical history, following her surgery, the standard of care required checking of plaintiff's Coumadin levels every two to three days to ensure the proper therapeutic dosage.

After discharge from the hospital, plaintiff returned home where she received continuing care from home nurses. Her nurses reported to Troy Internal Medicine in regard to plaintiff's Coumadin levels. Specifically, on December 26, 2009, plaintiff's Coumadin levels were checked and reported to Dr. Simpson. Dr. Simpson ordered continuation of Coumadin and a re-check of plaintiff's Coumadin levels on December 30, 2009. Per these instructions, plaintiff's Coumadin levels were again checked on December 30, 2009, at which time those levels had

-1-

risen significantly from December 26, 2009. Home care nurses, who were concerned by the levels, communicated those results to Troy Internal Medicine via telephone. Despite plaintiff's significant rise in Coumadin levels, Dr. Fraser ordered continuation of the same dosage of Coumadin and a re-check of plaintiff's Coumadin levels more than two weeks later.

Before this re-check occurred, in early January of 2010, plaintiff began experiencing new medical problems, including unsteady gait and balance, lethargy, headaches, facial pain, and double vision. Plaintiff's daughter took her to the hospital on January 12, 2010, where testing revealed that plaintiff had a subdural hematoma due to excessively high Coumadin levels. Plaintiff's condition necessitated a left frontal craniotomy "for evacuation of the brain bleeds." As a result of bleeding on the brain, plaintiff suffered neurological damages, including speech, motor skill, and cognitive difficulties. It is plaintiff's basic contention that those involved with her treatment breached the standard of care by failing to address whether the dosage was appropriate given the high levels of Coumadin in her blood and by ordering a recheck in two weeks, rather than more frequent checks.

On November 9, 2011, plaintiff sent a notice of intent to Dr. Sinkoff, Dr. Simpson, and Troy Internal Medicine. Her notice of intent also included reference to a "JohnDoe/Jane Doe, M.D," an internist whose name was then unknown to plaintiff. In her notice of intent she detailed her injuries and she alleged among the negligent acts causing those injuries the decision made on December 30, 2009 to continue the same dosage of Coumadin and not to recheck her Coumadin levels for at least two weeks. She attributed this wrongful conduct to "Dr. Sinkoff, Dr. Simpson, Troy Internal Medicine, and others employed by Troy Internal Medicine." On May 8, 2012, plaintiff filed her original complaint in the present suit. In her complaint, she named Dr. Simpson, Dr. Sinkoff, and Troy Internal Medicine.

However, neither plaintiff's notice of intent nor her original complaint included Dr. Fraser because, according to plaintiff, she did not learn of his specific involvement in her treatment until September of 2012. In particular, on September 19, 2012, in response to interrogatories, Dr. Fraser's name was given to plaintiff as a physician who was involved with her treatment. Proof of his involvement was evidenced by a "phone slip," purportedly written by Dr. Fraser on December 31, 2009, although it does not appear to contain his signature or any other identifying information. After learning of Dr. Fraser's involvement, plaintiff sent a second notice of intent on November 1, 2012, naming both Dr. Fraser and Troy Internal Medicine. Then, on January 8, 2013, plaintiff moved to amend her complaint to add Dr. Fraser as a defendant. Over objection from defendants, the trial court granted plaintiff's motion and she amended her complaint to include Dr. Fraser as a defendant on February 4, 2013.

Dr. Fraser then moved for summary disposition pursuant to MCR 2.116(C)(7). He contended that plaintiff's complaint was time barred by MCL 600.5805(6). In response, plaintiff argued that the discovery rule contained in MCL 600.5828a(2) applied, such that she had six months from the time she learned of Dr. Fraser's involvement in which to file her suit. The trial court granted Dr. Fraser's motion for summary disposition. Thereafter, an order entered dismissing plaintiff's claims against the remaining defendants. Plaintiff now appeals as of right, challenging solely the trial court's grant of summary disposition to Dr. Fraser.

On appeal, this Court reviews de novo a trial court's decision on a motion for summary disposition. *DiPonio Const Co, Inc v Rosati Masonry Co, Inc*, 246 Mich App 43, 46; 631 NW2d 59 (2001). Summary disposition is properly granted under MCR 2.116(C)(7) when a plaintiff's complaint is barred by the applicable statute of limitations. *Burton v Macha*, 303 Mich App 750, 754; 846 NW2d 419 (2014). "When reviewing a motion for summary disposition under MCR 2.116(C)(7), the trial court must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor to determine whether any factual development could provide a basis for recovery." *Hoffman v Boonsiri*, 290 Mich App 34, 39; 801 NW2d 385 (2010). When the facts are not in dispute, whether a cause of action is time barred by the applicable statute of limitations poses a question of law which this Court reviews de novo.[1] *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 386; 738 NW2d 664 (2007).

As noted, the trial court granted summary disposition to Dr. Fraser because it determined plaintiff's claims against him were time-barred by the applicable statute of limitations. Plaintiff contests this determination on appeal. She argues specifically that the discovery rule provided for in MCL 600.5838a(2) applies in this case and that, pursuant to this rule, she had six months from the discovery of Dr. Fraser's identity to file suit, meaning that, according to plaintiff, her notice of intent to Dr. Fraser and the amendment of her complaint to include Dr. Fraser were timely.

Relevant to resolution of this dispute, pursuant to MCL 600.5838a(1), a claim based on medical malpractice "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." Under MCL 600.5805(6), the typical period of limitations for an action charging medical malpractice is two years.[2]

In this case, as evidenced by the phone slip detailing Dr. Fraser's instructions to plaintiff's home nurse, Dr. Fraser's allegedly wrongful act occurred, at the latest, on December 31, 2009, when he ordered the continuation of Coumadin at the same dosage and he delayed additional testing for two weeks. Consequently, plaintiff's claim accrued on December 31, 2009, and the applicable statute of limitations expired on December 31, 2011. See MCL 600.5838a(1); MCL 600.5805(6).

---

[1] Plaintiff suggests on appeal that summary disposition should not have been granted in this case because there may be a factual dispute regarding when she discovered, or should have discovered, her claim. Plaintiff is mistaken in this regard because the facts in this case are uncontroverted. The only issue to be resolved is what legal conclusion should be drawn from the facts. Consequently, the issue in this case may be decided as a matter of law, without the need to submit the matter to a jury. See *Moll v Abbott Labs.*, 444 Mich 1, 27-28; 506 NW2d 816 (1993).

[2] There are exceptions to this general two year rule including, for instance, cases involving infancy, insanity, or death, none of which apply in the present case. See MCL 600.5838a(2); MCL 600.5851 to 600.5856.

Plaintiff does not contest that the general two-year statute applicable to her malpractice claims had expired. She asserts instead that her claims against Dr. Fraser are not barred by this two year period of limitations because she did not know of Dr. Fraser's identity as the perpetrator of the malpractice until September 19, 2012. It is her position that, under the discovery rule prescribed in MCL 600.5838a(2), she then had six months from her discovery of his identity to provide a notice of intent and amend her suit.

The discovery rule on which plaintiff's claim rests is found at MCL 600.5838(2). It states:

> Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, *or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later.* However, except as otherwise provided in section 5851(7) or (8), the claim shall not be commenced later than 6 years after the date of the act or omission that is the basis for the claim. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition, or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. A medical malpractice action that is not commenced within the time prescribed by this subsection is barred. . . . [MCL 600.5838a(2) (emphasis added).]

Whether a plaintiff has discovered, or should have discovered, the existence of a claim is judged on the basis of objective facts. *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 232; 561 NW2d 843 (1997). A plaintiff is said to have discovered, or should have discovered, a cause of action "[o]nce a claimant is aware of an injury and its possible cause . . . ." *Id.* at 222 (citation omitted). The plaintiff need not "know the details of the evidence" supporting her claim, nor is it necessary that she be able to prove each element of the cause of action. *Moll*, 444 Mich at 24 (citation omitted); *Solowy*, 454 Mich at 224. Rather, it is enough that she knows of a "*possible* cause of action." See *Solowy*, 454 Mich at 224-225. The reasoning for this "possible cause of action" approach is that "[o]nce a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim." *Id.* at 222-223. See also *Moll*, 444 Mich at 24-25.

The specific issue in the present case is whether it may be said a plaintiff knew, or should have known, of a cause of action where she was fully aware of her injuries and the acts causing those injuries but was unaware of the precise identity of the wrongdoer. This question is not a novel one in Michigan, and there is ample support for the proposition that the discovery rule described in MCL 600.5838a(2) is not triggered by discovery of a wrongdoer's identity.

For example, in *Poffenbarger*, wherein the plaintiff sought to add additional parties to her medical malpractice complaint after the expiration of the period of limitations, this Court determined that the plaintiff had not discovered the existence of the claim for purposes of MCL 600.5838a(2) when she learned of the doctor's identity. *Poffenbarger v Kaplan*, 224 Mich App

1; 568 NW2d 131 (1997), overruled in part on other grounds by *Miller v Mercy Mem Hosp Corp*, 466 Mich 196; 644 NW2d 730 (2002). This Court explained:

> Although [the plaintiff] was aware of a potential wrongful death action at least by July 22, 1993, when she filed her original complaint, she did not move to amend her complaint and add these defendants until May 19, 1994, almost ten months later. That plaintiff initially may not have been aware of [the doctor's] identity does not alter her duty of diligence in discovering a potential cause of action. *The discovery period applies to discovery of a possible claim, not the discovery of the defendant's identity.* [*Id.* at 12 (emphasis added).]

Likewise, in *Weisburg v Lee*, 161 Mich App 443, 448; 411 NW2d 728 (1987), this Court rejected the plaintiff's claim that the discovery rule should apply because he was unaware of the malpractice committed by certain doctors. As in *Poffenbarger*, this Court determined that "[t]he discovery rule applies to discovery of a possible claim, not the discovery of the defendant's identity." *Id.* Indeed, the rule discussed in *Poffenbarger* was not a novel holding; rather, it has long been a "well-established principle that the six-month 'discovery rule' does not apply to situations where the negligent act is known, but the identity of the defendant is unknown." *Smith v Sinai Hosp of Detroit*, 152 Mich App 716, 726; 394 NW2d 82 (1986). See also *Lefever v American Red Cross*, 108 Mich App 69, 74; 310 NW2d 278 (1981) ("[T]he 'time of discovery' rule relates to the discovery of the asserted malpractice and not the discovery of defendant's identity or involvement."); *Hall v Fortino*, 158 Mich App 663, 668; 405 NW2d 106 (1986) (same).

Given the principle that the discovery rule applies to discovery of a claim, and not the discovery of a wrongdoer's identity, it follows that the discovery rule found in MCL 600.5838a(2) does not apply to plaintiff's claims against Dr. Fraser, meaning that her claims against Dr. Fraser are instead time barred by the general period of limitation applicable to medical malpractice claims. That is, as discussed, plaintiff's claim accrued on December 31, 2009, and the applicable statute of limitations expired on December 31, 2011. See MCL 600.5838a(1); MCL 600.5805(6). Because plaintiff had not included Dr. Fraser in her notice of intent or her complaint before the expiration of the statute of limitations, her claim was time barred, despite any diligence by plaintiff in pursuing her claims and endeavoring to learn Dr. Fraser's identity. Cf. *Rheaume v Vandenberg*, 232 Mich App 417, 419-424; 591 NW2d 331 (1998). Although plaintiff argues for the application of the six month discovery rule as of September 2012, she does so based on her discovery of Dr. Fraser's identity. However, as made plain in *Poffenbarger* and numerous other cases, the discovery rule is not triggered by the discovery of a wrongdoer's identity.[3]

---

[3] *Poffenbarger*, as a published decision of this Court decided after November 1, 1990 constitutes precedent which we are bound to follow. MCR 7.215(J)(1). Plaintiff nonetheless contests the applicability of *Poffenbarger*, arguing it has been overruled, its operative holding was dicta, and it is factually distinguishable. These arguments are without merit. First, while *Miller*, 466 Mich at 198, 200 n 3, overruled *Poffenbarger*, it plainly did so on other grounds that are irrelevant to

Instead, the relevant inquiry in regard to the discovery rule is when plaintiff discovered her claim, and it is clear that plaintiff knew of her claim, i.e., her injury and the possible cause of those injuries, long before she discovered Dr. Fraser's identity. Specifically, it is undisputed that plaintiff has long known that, on December 30 or 31, 2009, despite elevated levels of Coumadin, a physician at Troy Internal Medicine ordered that plaintiff continue on the same dosage of Coumadin and that she wait two weeks before re-checking her Coumadin levels. Indeed, plaintiff evidenced her knowledge of these facts by including these factual details in her original notice of intent and her original complaint.[4] Given plaintiff's awareness of her injuries and their possible cause, plaintiff had learned of the possible existence of her claim and she was equipped with the necessary knowledge to diligently pursue that claim. See *Solowy*, 454 Mich at 222-232; *Moll*, 444 Mich at 24-25. In short, contrary to plaintiff's arguments, her subsequent discovery of Dr. Fraser's specific involvement did not amount to the discovery of her claim and it did not trigger the application of the discovery rule. See *Poffenbarger*, 224 Mich App at 12; *Weisburg*, 161 Mich App at 448.

We are not unaware that the result in this case appears rather harsh given that it is uncontested that plaintiff remained ignorant of Dr. Fraser's involvement in her treatment until September of 2012. Plaintiff's point is well taken that, without knowledge of Dr. Fraser's identity as a wrongdoer, she could not include him in her complaint or notice of intent by name and even including "John Doe" as a defendant would not be sufficient to toll the statute of limitations. See *Rheaume*, 232 Mich App at 420-424. Be that as it may, plaintiff ignores the fact that she had two years from the time of Dr. Fraser's wrongdoing, or six months from the

the present dispute. Second, *Poffenbarger*'s holding was not dicta because whether the discovery rule applied was necessary to a determination of whether the plaintiff's claims were timely. See *Poffenbarger*, 224 Mich App at 11. See also *Dessart v Burak*, 252 Mich App 490, 497 n 5; 652 NW2d 669 (2002). Third, *Poffenbarger* is not factually distinguishable. Contrary to plaintiff's recitation of *Poffenbarger*'s facts, the plaintiff in that case was a personal representative, not the decedent patient who had been seen by the doctor in question. See *Poffenbarger*, 224 Mich App at 4 n 2. In other words, as in the present case, the plaintiff in *Poffenbarger* was apparently unaware of the doctor's involvement. *Id.* at 11. In short, *Poffenbarger* remains good law and, as binding precedent of this Court, it controls resolution of the current dispute. See MCR 7.215(J)(1). Moreover, apart from *Poffenbarger*, there is ample persuasive authority of this Court to support the conclusion that the discovery rule does not apply to a wrongdoer's identity. See, e.g., *Weisburg*, 161 Mich App at 448. See also *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) ("Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority."). Plaintiff, in contrast, offers not a single case holding that discovery of a wrongdoer's identity triggers application of the discovery rule.

[4] Cf. *Smith*, 152 Mich App at 725 ("As the complaint clearly illustrates, plaintiff at that point knew of all the specific acts of negligence that occurred; at the most, all she did not know was the identity of the exact parties involved. Indeed, [the date on which plaintiff filed her complaint] is the *latest* plaintiff could possibly be held to have discovered the existence of her claim, as it is ludicrous to believe that a plaintiff is not aware of the existence of a claim when such claim has been filed in court by that plaintiff.").

discovery of her injury and its possible cause, whichever was later, in which to ascertain Dr. Fraser's identity and his role in her misfortune. It is any would-be plaintiff's responsibility not only to diligently investigate and pursue claims, but to do so "within the time frames established by the Legislature." *Fazzalare v Desa Indus, Inc*, 135 Mich App 1, 6; 351 NW2d 886 (1984). Thus, while plaintiff maintains that she acted diligently to investigate and pursue her claim, it is nonetheless true that—despite knowing of her injuries and the specific negligent acts giving rise to those injuries—she failed to learn in a timely fashion that Dr. Fraser had been responsible for the allegedly wrongful conduct.[5] Cf. *Peltier v Eldredge*, 131 Mich App 533, 537-538; 345 NW2d 605 (1983). In such circumstances, where plaintiff's claim, i.e., her injuries and the cause of the injuries, is known to plaintiff, she is not entitled to make use of the discovery rule. See *id.*; *Poffenbarger*, 224 Mich App at 12. If the result is unfortunately a harsh one in this case, it is because the statutes of limitations are somewhat harsh in and of themselves. *Hall*, 158 Mich App at 669. See also *Solowy*, 454 Mich at 225-226.[6]

In an effort to circumvent the application of the statute of limitations, plaintiff briefly argues on appeal that the doctrine of reasonableness described in *Solowy*, 454 Mich at 227, should apply. Under this rule, in cases where there is a delay in diagnosis, the Michigan Supreme Court has recognized that there must be a flexible approach to applying the discovery rule. *Id.* In arguing for the application of this doctrine, plaintiff ignores, however, the basic fact that this doctrine applies in cases of delayed diagnosis, meaning those cases in which there is a late discovery of the injury itself and the injury's link to the negligent act. But in this case, plaintiff did not have a delayed diagnosis and there was never any question of the causal nexus between her injuries and the alleged malpractice occurring in December of 2009. See *id.* Plaintiff offers no authority to suggest that the doctrine of reasonableness has ever been applied to cases where the identity of the wrongdoer is unknown, and the rationale supporting this rule— namely, the difficulty inherent in obtaining a diagnosis in some cases—is not present where it is the question of the wrongdoer's identity which is at issue. See generally *Walerych v Isaac*, 63 Mich App 478, 481; 234 NW2d 573 (1975) ("Discovery of the identity of an alleged tort-feasor is no more difficult when the wrong alleged is malpractice."). In short, plaintiff knew of her injury and the cause, and the doctrine of reasonableness does not apply to her delayed discovery of Dr. Fraser's identity.

In sum, because plaintiff's discovery of Dr. Fraser's identity did not trigger application of the discovery rule, plaintiff's complaint against Dr. Fraser, filed more than two years after her

---

[5] Plaintiff does not allege that defendants in any way concealed the existence of her claim during this time. Had there been evidence of fraudulent conduct to conceal a claim or a wrongdoer's identity, plaintiff would not be without recourse. See MCL 600.5838a(2)(a); MCL 600.5855. In this case, it simply appears that plaintiff failed to learn Dr. Fraser's identity in a timely manner despite knowing the specific negligent acts giving rise to her injuries.

[6] Insofar as plaintiff raises policy arguments in opposition to the application of the statute of limitations in this case, these policy concerns pose a question for the Legislature, not this Court. See generally *Rheaume*, 232 Mich App at 423.

claim accrued, was untimely.  See MCL 600.5838a(1); MCL 600.5805(6).  Consequently, the trial court properly granted summary disposition under MCR 2.116(C)(7).

Affirmed.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell