*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHELDON CLEMONS, Personal Representative of
the ESTATE OF CARLA CLEMONS,

        Plaintiff-Appellant,

v

LEGACY DMC, doing business as DMC SINAI-
GRACE HOSPITAL, VHS OF MICHIGAN, INC.,
doing business as DMC SINAI-GRACE HOSPITAL,
VHS SINAI-GRACE HOSPITAL, INC., doing
business as DMC SINAI-GRACE HOSPITAL, and
JOHN R. HAAPANIEMI, D.O.,

        Defendants-Appellees,

and

YASH K. SHAH, M.D., ARAVIND MOHANDAS,
M.D., CASSANDRE PERARD, D.O., and ELLIOT
I. GREENSPAN, D.O.,

        Defendants.

UNPUBLISHED
August 17, 2023

No. 360802
Wayne Circuit Court
LC No. 19-008053-NH

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

In this interlocutory appeal of a medical malpractice action, plaintiff, Sheldon Clemons as personal representative of the Estate of Carla Clemons, appeals by leave granted[1] the trial court's order granting summary disposition in favor of defendant Dr. John R. Haapaniemi, and dismissing

---

[1] *Estate of Carla Clemons v Legacy DMC*, unpublished order of the Court of Appeals, entered August 12, 2022 (Docket No. 360802).

plaintiff's claim against Dr. Haapaniemi and the attendant vicarious liability claim against defendants Legacy DMC, VHS of Michigan, Inc., and VHS Sinai-Grace Hospital, Inc. (collectively, "Sinai-Grace").[2]  Carla Clemons died while she was being treated by physicians at Sinai-Grace Hospital.  The issues in this appeal stem from an error in Carla's medical records—those records reflected that Carla's attending physician was defendant Dr. Elliot I. Greenspan when, in fact, the attending physician was Dr. Haapaniemi.[3]  Due to this defect, plaintiff initially named Dr. Greenspan as a defendant, but was granted leave to add Dr. Haapaniemi as a defendant. Shortly thereafter, Dr. Haapaniemi moved for summary disposition on grounds that plaintiff's claim against him was barred by the statute of limitations.  The trial court agreed and granted Dr. Haapaniemi's motion.  On appeal, plaintiff argues that (1) the trial court erroneously concluded that plaintiff should have discovered her claim against Dr. Haapaniemi on October 22, 2019, instead of July 15, 2020, which in turn led the trial court to erroneously conclude that plaintiff's claim against Dr. Haapaniemi was barred by the statute of limitations, (2) even if the trial court properly concluded that plaintiff should have discovered her claim against Dr. Haapaniemi on October 22, 2019, plaintiff's complaint was nevertheless timely because the fraudulent-concealment exception to the statute of limitations in MCL 600.5855[4] applies, and (3) Dr. Haapaniemi should be equitably estopped from bringing a statute-of-limitations defense.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At about 9:00 p.m. on June 7, 2017, Carla was taken to the Sinai-Grace Hospital's emergency department by family members after experiencing hotness, shortness of breath, and confusion.  As treatment began, Carla became agitated and delirious, and medical personnel sedated her.  The medical staff monitored Carla's cardiopulmonary system and performed several imaging procedures, but were unable to determine the cause of the Carla's condition.  Carla was then admitted into the medical intensive care unit in critical condition.  Overnight, Carla's blood pressure dropped to very low levels and there was a build-up of fluid around her heart.  At about 7:50 a.m. on June 8, 2017, Carla went into cardiac arrest.  Medical personnel performed CPR and administered drugs in an effort to restart Carla's heart, but the efforts were unsuccessful.  Carla was pronounced dead at 8:11 a.m. on June 8, 2017.  The medical records from Sinai-Grace identify Carla's cause of death as cardiac arrest from an unknown cause.  An assistant Wayne County medical examiner performed an autopsy on Carla's body and opined that Carla's death was caused by an aortic dissection, which is a tear in the aorta.

On June 6, 2019, plaintiff brought the instant action against Dr. Greenspan, Dr. Cassandre Perard, Dr. Yash K. Shah, Dr. Aravind Mohandas, and Sinai-Grace.  As previously stated, Carla's

---

[2] Defendants Dr. Aravind Mohandas and Dr. Cassandre Perard were dismissed by stipulation. Plaintiff's claim against defendant Dr. Yash K. Shah is still pending.

[3] The trial court did not enter an order dismissing Dr. Greenspan, but plaintiff eventually filed an amended complaint that did not include a claim against Dr. Greenspan.

[4] Plaintiff's statement of questions presented lists MCL 600.2955 as the relevant statute, but it is clear that plaintiff is referring to MCL 600.5855.

medical records from her stay at Sinai-Grace listed Dr. Greenspan as the attending physician, when the actual attending physician was Dr. Haapaniemi. Dr. Perard, a resident physician, provided care to Carla under the supervision of a senior resident and Dr. Haapaniemi.

On October 22, 2019, Dr. Perard filed and served on plaintiff and Sinai-Grace an affidavit in which Dr. Perard identified Dr. Haapaniemi as the attending physician. On October 23, 2019, Dr. Perard filed a motion for summary disposition, to which she attached the same affidavit identifying Dr. Haapaniemi as the attending physician. After plaintiff, in response, identified Dr. Greenspan as the attending physician, Dr. Perard stated in her November 27, 2019 reply, "This is [a] factual error made by the plaintiff. Dr. Perard's supervising physician and the attending physician of the Intensive Care Unit was Dr. John Haapaniemi, not Dr. Greenspan." After the trial court denied Dr. Perard's motion for summary disposition, Dr. Perard filed a motion for reconsideration in which she reiterated that Dr. Haapaniemi, not Dr. Greenspan, was the attending physician.

On March 13, 2020, counsel for Sinai-Grace and Dr. Greenspan sent an e-mail to plaintiff's counsel stating that Dr. Greenspan was not involved in treating Carla. On June 16, 2020, Dr. Greenspan filed an affidavit of noninvolvement in which Dr. Greenspan averred that he did not supervise residents in June 2017 and that he was not involved in Carla's treatment. At Dr. Perard's July 15, 2020 deposition, she testified that, consistent with her previous affidavit and court filings, Dr. Haapaniemi, not Dr. Greenspan, was the attending physician overseeing Carla's care.

On September 15, 2020, plaintiff served Dr. Haapaniemi with a notice of intent (NOI) to sue for medical malpractice. On October 23, 2020, plaintiff filed a motion to amend his complaint to name Dr. Haapaniemi as a defendant on December 16, 2020 (i.e., 91 days after plaintiff served Dr. Haapaniemi with an NOI due to the shortened notice period under MCL 600.2912b(3)). The trial court initially denied plaintiff's motion, reasoning that a claim against Dr. Haapaniemi was barred by the statute of limitations and plaintiff unduly delayed filing a motion to amend his complaint. Plaintiff moved for reconsideration, and the trial court granted the motion and allowed plaintiff to add Dr. Haapaniemi as a defendant. In so doing, the trial court ruled that Dr. Haapaniemi could still raise a statute-of-limitations defense, and rejected plaintiff's argument that any of the defendants fraudulently concealed plaintiff's claim against Dr. Haapaniemi.

After plaintiff filed an amended complaint adding a claim against Dr. Haapaniemi, Dr. Haapaniemi moved for summary disposition, arguing that plaintiff's claim was barred by the applicable statute of limitations. In response, plaintiff argued that the six-month discovery limitations period in MCL 600.5838a(2) applied to his claim, and that he satisfied that statute because he did not discover his claim against Dr. Haapaniemi until Dr. Perard identified Dr. Haapaniemi in her July 15, 2020 deposition. In reply, Dr. Haapaniemi argued that the six-month limitations period for filing a medical malpractice action after discovering an injury does not apply when the injury is known but a new party is discovered. Dr. Haapaniemi alternatively argued that plaintiff first learned about Dr. Haapaniemi's involvement in Carla's treatment on October 22, 2019, when Dr. Perard submitted her affidavit, so plaintiff's claim against Dr. Haapaniemi was still untimely. The trial court granted Dr. Haapaniemi's motion for summary disposition, reasoning that the latest plaintiff should have discovered a claim against Dr. Haapaniemi was October 2019 when Dr. Perard identified Dr. Haapaniemi, and plaintiff did not bring his claim within six months of that date.

-3-

Plaintiff moved for reconsideration, arguing that summary disposition was improper because (1) given Sinai-Grace's fiduciary relationship with Carla, it had a duty to disclose Dr. Haapaniemi's involvement in this case; its failure to do so amounted to fraudulent concealment; and, as such, plaintiff had two years from the date of discovery to file his claim under MCL 600.5855; and (2) even if MCL 600.5855 does not apply, Dr. Haapaniemi should still be equitably estopped from raising a statute-of-limitations defense. The trial court denied plaintiff's motion for reconsideration because (1) plaintiff had not identified any acts by Sinai-Grace comprising fraudulent concealment; (2) even if Sinai-Grace had a fiduciary relationship with plaintiff, the hospital "cannot disclose what it does not know," and it learned of the mistake in its records on the same day as plaintiff—October 22, 2019, when Dr. Perard filed her affidavit; and (3) "equitable tolling cannot save Plaintiff's claim against Dr. Haapaniemi" because plaintiff waited nearly a year after he should have discovered his claim against Dr. Haapaniemi to file his NOI, i.e., he failed to diligently pursue his claim against Dr. Haapaniemi. This appeal followed.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred by a statute of limitations. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). Neither party contends that there are genuine issues of material fact, and as such, both parties ask this Court to decide as a matter of law whether plaintiff's claim is statutorily barred. See *Holmes v Mich Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000). Questions of statutory interpretation are reviewed de novo. *Nuculovic*, 287 Mich App at 61.

## III. THE DISCOVERY RULE

Plaintiff argues that the trial court erred when it ruled that plaintiff should have discovered his claim against Dr. Haapaniemi on October 22, 2019, rather than on July 15, 2020, which led the trial court to erroneously conclude that plaintiff's claim was barred by the statute of limitations. We disagree.

A medical malpractice claim accrues "at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(1). Generally, there is a two-year limitations period from the date that a claim accrues in which a plaintiff must file an action alleging medical malpractice. MCL 600.5805(8). However, MCL 600.5838a(2) contains an exception to the general rule, stating in relevant part:

> Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time . . . within 6 months after the plaintiff discovers or should have discovered the existence of the claim . . . . The burden of proving that the plaintiff . . . neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. A medical malpractice action that is not commenced within the time prescribed by this subsection is barred.

The parties agree that the pertinent issue to be resolved as it relates to MCL 600.5838a is when plaintiff discovered or should have discovered his claim against Dr. Haapaniemi.

This Court has held that the six-month discovery limitations period in MCL 600.5838a begins upon the "discovery of a possible claim, not the discovery of the defendant's identity." *Poffenbarger v Kaplan*, 224 Mich App 1, 12; 568 NW2d 131 (1997), overruled on other grounds by *Miller v Mercy Mem Hosp Corp*, 466 Mich 196; 644 NW2d 730 (2002). See also *Smith v Sinai Hosp of Detroit*, 152 Mich App 716, 726; 394 NW2d 82 (1986) (explaining that it is a "well-established principle that the six-month 'discovery rule' does not apply to situations where the negligent act is known, but the identity of the defendant is unknown"); *Weisburg v Lee*, 161 Mich App 443, 448; 411 NW2d 728 (1987) ("The discovery rule applies to discovery of a possible claim, not the discovery of the defendant's identity."); *Lefever v Am Red Cross*, 108 Mich App 69, 74; 310 NW2d 278 (1981) (explaining that "the 'time of discovery' rule relates to the discovery of the asserted malpractice and not the discovery of defendant's identity or involvement").[5] Despite these cases being cited by defendants, as well as by the trial court when it denied plaintiff's motion for reconsideration, plaintiff never challenges this line of cases or explains why they were incorrectly decided. Due to this, we could conclude that plaintiff has failed to demonstrate error requiring reversal. For thoroughness, however, we conclude that, assuming without deciding that the statements of law from these cases is inaccurate—meaning that plaintiff could timely bring a cause of action against Dr. Haapaniemi within six months of discovering his involvement— plaintiff's complaint against Dr. Haapaniemi was still untimely.

Recently, in *Bowman v St John Hosp & Med Ctr*, 508 Mich 320; 972 NW2d 812 (2021), our Supreme Court offered guidance about how courts should determine whether a plaintiff should have discovered a claim. There, our Supreme Court reaffirmed that the common-law discovery rule applied to medical malpractice claims. *Id.* at 340. That rule provides that "the statute of limitations begins to run when the plaintiff discovers or, *through the exercise of reasonable diligence*, should have discovered a possible cause of action." *Id.* quoting *Moll v Abbott Laboratories*, 444 Mich 1, 29; 506 NW2d 816 (1993), abrogated in part by *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 393; 738 NW2d 664 (2007) (quotation marks omitted; emphasis added). *Bowman* considered the role that diligence plays in discovering a claim, explaining that there are two types of diligence—diligence in pursuing a claim after it is discovered, and "diligence in responding to suspicion about the cause of injury." *Bowman*, 508 Mich at 340. In differentiating the two, *Bowman* explained that when "the facts compel an inference of an injury's possible cause, diligence has little role to play in evaluating whether a plaintiff should have discovered a possible cause of action," whereas "[w]hen the facts don't compel an inference of a possible cause but do arouse suspicion, we require diligence." *Id.* at 341. Addressing the latter situation, our Supreme Court explained that "whether a plaintiff's suspicions have been aroused often will depend not only on the knowable facts but also on what a patient

---

[5] This Court is not required to follow a rule of law established in a case published by this Court before November 1, 1990. MCR 7.215(J)(1). However, a published decision issued before November 1, 1990, still has precedential effect under the rules of stare decisis. See MCR 7.215(C)(2). See also *Legacy Custom Builders, Inc v Rogers*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359213); slip op at 5 n 1.

learns and reasonably understands from her doctors." *Id*. at 343. The Court expounded that "the plaintiff must 'possess at least some minimum level of information that, when viewed in its totality, suggests a nexus between the injury and the negligent act.' " *Id*., quoting *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 226; 561 NW2d 843 (1997). The Court surmised that the "objective discovery rule has two aspects": (1) "a plaintiff 'should have discovered' a possible cause of action when the available facts would let her infer malpractice" and (2) "a plaintiff 'should have discovered' a possible cause of action when the plaintiff knows facts that should arouse her suspicions and doesn't diligently investigate." *Bowman*, 508 Mich at 343.

We conclude that plaintiff's claim against Dr. Haapaniemi was untimely under either "aspect" of the discovery rule. On October 22, 2019, Dr. Perard submitted a sworn affidavit in which she averred that Dr. Haapaniemi was the attending physician for Carla's treatment. After plaintiff was informed of this fact, he knew or should have known that he had a possible cause of action against Dr. Haapaniemi. Plaintiff contends that he could not have known on October 22, 2019, that he had a possible cause of action against Dr. Haapaniemi because Dr. Perard's affidavit conflicted with Carla's medical records. Despite this conflict, the evidence available to plaintiff would have nevertheless allowed him to infer a *possible* cause of action against Dr. Haapaniemi, which is all that is required under *Bowman*. Regardless, at most, the conflict between Dr. Perard's affidavit and Carla's medical records merely shifted this case to the second "aspect" of the discovery rule discussed in *Bowman*. Under that "aspect," Dr. Perard's affidavit should have aroused plaintiff's suspicions and, thus, triggered his duty to investigate whether he had a possible cause of action against Dr. Haapaniemi. Under MCL 600.5838a(2), plaintiff has the burden of proving that he should not have discovered his claim against Dr. Haapaniemi more than six months before he filed his complaint. Yet plaintiff does not point to a single step he took to investigate whether he had a possible cause of action against Dr. Haapaniemi after receiving Dr. Perard's affidavit on October 22, 2019. Due to plaintiff's failure to point to any evidence suggesting that he diligently investigated whether he had a possible cause of action against Dr. Haapaniemi, his claim is untimely under the second "aspect" of the objective discovery rule as well.[6]

Plaintiff argues that Dr. Perard's affidavit was insufficient to "arouse suspicion" that plaintiff might have a possible cause of action against Dr. Haapaniemi because, in light of Carla's medical records, plaintiff required testimony "taken **under oath**" to suspect a possible cause of action against Dr. Haapaniemi. Plaintiff does not cite any legal authority in support of this argument, thereby abandoning it. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) (explaining that "where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned"). But even accepting the argument as legally viable, it

---

[6] Plaintiff attempts to excuse this failure by arguing on appeal that "the proper Defendant **was not framed** by the Hospital/Dr. Greenspan," seemingly contending that it was defendants' responsibility to investigate whether plaintiff had a possible cause of action against Dr. Haapaniemi. Plaintiff has not cited any legal authority in support of his contention, and *Bowman* is otherwise clear that once a plaintiff knows facts that should arouse their suspicions, *the plaintiff* has a duty to diligently investigate.

is meritless because an affidavit is a sworn statement made under oath, see *Holmes*, 242 Mich App at 711, meaning Dr. Perard's October 22, 2019 affidavit satisfied plaintiff's standard.

Plaintiff also emphasizes that Dr. Perard's affidavit said only that Dr. Haapaniemi was the attending physician, and contends that this could not have alerted him to a possible cause of action against Dr. Haapaniemi because it did not identify Dr. Haapaniemi as the "supervising physician." Plaintiff explains that this is significant because all of the allegations against Dr. Greenspan in the original complaint stemmed from Dr. Greenspan's role supervising resident physicians. This argument is unconvincing for a variety of reasons. First, in plaintiff's complaint, he identified Dr. Greenspan only as the attending physician; he never identified Dr. Greenspan as the "supervising physician." This trend followed in plaintiff's second complaint, wherein plaintiff never identified Dr. Haapaniemi as the "supervising physician," but, again, only identified him as the "attending physician." From this, it is apparent that plaintiff was concerned with the identity of the "attending physician," and Dr. Perard averred in her October 2019 affidavit that the attending physician was Dr. Haapaniemi.

Second, Carla's medical records list Dr. Greenspan only as the "attending physician"; those records make no mention of a "supervising physician." Yet plaintiff was able to infer a possible cause of action against Dr. Greenspan based on Carla's medical records—on appeal, plaintiff states in no uncertain terms that "the allegations made against Dr. Greenspan" were "based on the incorrect medical records." If those records naming Dr. Greenspan only as the attending physician were sufficient for plaintiff to infer a possible cause of action against Dr. Greenspan, then surely Dr. Perard's affidavit naming Dr. Haapaniemi only as the attending physician was sufficient for plaintiff to infer a possible cause of action against Dr. Haapaniemi. At the very least, the affidavit was sufficient to *arouse plaintiff's suspicion* about a possible cause of action against Dr. Haapaniemi, triggering plaintiff's duty to diligently investigate, which is all *Bowman* requires under the second "aspect" of the discovery rule.

Finally, even assuming plaintiff is correct that Dr. Perard's October 22, 2019 affidavit was not enough to arouse plaintiff's suspicions about whether he had a possible cause of action against Dr. Haapaniemi due to the fact that the affidavit did not identify Dr. Haapaniemi as the "supervising physician," plaintiff's lingering doubts about whether he had a possible cause of action against Dr. Haapaniemi would have been eliminated by Dr. Perard's reply to plaintiff's response to her motion for summary disposition. In that reply, Dr. Perard stated that Dr. Haapaniemi was both the "supervising physician and the attending physician." This clarified the precise point that was, according to plaintiff, missing from Dr. Perard's affidavit—that Dr. Haapaniemi was also the "supervising physician." While a court filing is obviously different from a sworn affidavit, the filing provided the specific details that plaintiff claims were missing from Dr. Perard's affidavit. Thus, this filing, in conjunction with Dr. Perard's affidavit, unquestionably should have (at the very least) aroused plaintiff's suspicion about whether he had a possible cause of action against Dr. Haapaniemi, triggering his duty to diligently investigate. Dr. Perard's reply was filed on November 27, 2019, and it is undisputed that plaintiff's complaint naming Dr. Haapaniemi was still untimely if measured from that date.

Plaintiff further argues that Sinai-Grace and Dr. Greenspan's decision to wait until May 28, 2021, to move for Dr. Greenspan's dismissal on the basis of non-involvement supports that plaintiff should not have discovered his claim against Dr. Haapaniemi on October 22, 2019.

Plaintiff's argument in this respect is devoid of any reference to caselaw or other authority, and it is otherwise difficult to follow. We therefore conclude that this argument is abandoned. See *Prince*, 237 Mich App at 197.[7]

For these reasons, we conclude that, assuming that the six-month discovery limitations period in MCL 600.5838a can begin upon discovering the identity of a defendant, plaintiff's claim against Dr. Haapaniemi was still untimely because he discovered or should have discovered his claim against Dr. Haapaniemi in October 2019, and his complaint against Dr. Haapaniemi was filed more than six months after that date.

## IV. FRAUDULENT CONCEALMENT

Plaintiff next argues that the trial court erred when it granted summary disposition in favor of Dr. Haapaniemi because defendants fraudulently concealed plaintiff's claim against Dr. Haapaniemi, and plaintiff's claim was timely filed under the limitations period applicable to a fraudulently concealed claim. We disagree.

A claim has been fraudulently concealed when a person who may be liable conceals from the potential plaintiff the existence of the claim or the identity of a person who may be liable for the claim. *Brownell v Garber*, 199 Mich App 519, 523; 503 NW2d 81 (1993). Under the general fraudulent-concealment statute, MCL 600.5855, a fraudulently concealed claim

> may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Fraudulent concealment applies if the defendant conceals either the existence of a claim or the identity of a potential defendant. *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 643; 692 NW2d 398 (2004).

Generally, "[i]n order for fraudulent concealment to postpone the running of a limitations period, the fraud must be manifested by some affirmative act or misrepresentation; mere silence on the part of the defendant is not enough." *Brownell*, 199 Mich App at 527. There is an exception to the affirmative-act requirement, however, when there is a fiduciary relationship between the plaintiff and the defendant. *Id.* A party with a fiduciary duty to a potential plaintiff possesses a higher duty to disclose to the plaintiff facts giving rise to a malpractice claim than when there is

---

[7] In certain circumstances, this Court can (attempt to) address an argument that is not adequately supported by citation to legal authority, but that is not the case here. Plaintiff contends that, if Dr. Greenspan's noninvolvement was discovered in October 2019, then it "is inexplicable" why he did not move for dismissal before May 2021. It thus appears that the premise of plaintiff's argument is that Dr. Greenspan needed to move for dismissal sooner. It is unclear, however, where plaintiff derives that premise from because plaintiff has not cited any legal authority in support of his argument.

no fiduciary relationship between the parties. *Brownell*, 199 Mich App at 527-528. The doctor-patient relationship has long been recognized as a fiduciary relationship. *Eschenbacher v Hier*, 363 Mich 676, 679-680; 110 NW2d 731 (1961).[8]

Despite the exception to the affirmative-act requirement for fraudulent concealment when a fiduciary relationship exists, the general rules surrounding fraudulent concealment still apply. For instance, even when there is a fiduciary relationship, there can be no fraudulent concealment when the defendant is unaware that malpractice has occurred. *Brownell*, 199 Mich App at 528-529. Similarly, there can be no fraudulent concealment when a plaintiff is aware or should be aware of the existence of a claim. *Doe*, 264 Mich App at 643.

In this case, plaintiff cannot establish that Sinai-Grace fraudulently concealed plaintiff's claim against Dr. Haapaniemi because (1) there is no evidence that Sinai-Grace was aware of the malpractice claim before plaintiff, and (2) the evidence in the record establishes that Sinai-Grace discovered plaintiff's possible claim against Dr. Haapaniemi on the same day as plaintiff—when Dr. Perard filed her affidavit on October 22, 2019. Addressing the first point, there is no evidence in the record that Sinai-Grace knew that Dr. Haapaniemi provided care to Carla before Dr. Perard filed her October 22, 2019 affidavit. Because Sinai-Grace did not know of potential malpractice committed by Dr. Haapaniemi, Sinai-Grace did not have a duty to disclose Dr. Haapaniemi's identity before that date. *Brownell*, 199 Mich App at 528-529. As plaintiff emphasizes on appeal, Sinai-Grace admitted that it learned of plaintiff's possible claim against Dr. Haapaniemi on October 22, 2019. For the reasons already explained, however, that was the same day that plaintiff discovered—or should have discovered—his claim against Dr. Haapaniemi. See *Doe*, 264 Mich App at 643 (explaining that the possible-cause-of-action standard governs when a plaintiff should have known of the existence of the claim in the context of the fraudulent concealment statute). Stated differently, plaintiff was alerted to a possible claim against Dr. Haapaniemi at the same time as Sinai-Grace. Once plaintiff should have known the existence of the claim, Sinai-Grace could no longer be held responsible for fraudulent concealment. *Id*. Accordingly, the trial court did not err when it found that Sinai-Grace had not fraudulently concealed plaintiff's claim against Dr. Haapaniemi.

## V. EQUITABLE ESTOPPEL

Plaintiff lastly argues that the trial court erred when it determined that Dr. Haapaniemi could not be equitably estopped from raising a statute-of-limitations defense. We decline to address this unpreserved claim of error. Generally, to preserve an issue for appellate review, the issue must have been raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Plaintiff did not argue that equitable estoppel should

---

[8] As defendants point out on appeal, plaintiff's allegations of fraudulent concealment are against Sinai-Grace, who is not a doctor but a hospital, and plaintiff has not cited any caselaw establishing that a fiduciary relationship exists in this context. While this point is well-taken, for purposes of this opinion, we assume without deciding that a fiduciary relationship exists in the contest of a hospital-patient relationship as well.

be applied against Dr. Haapaniemi's ability to raise a statute-of-limitations defense until he filed his motion for reconsideration of the order granting summary disposition in favor of Dr. Haapaniemi. An issue raised for the first time in a motion for reconsideration is not preserved for appellate review. *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).[9] Although this Court has at times reviewed unpreserved claims of error in civil cases for plain error affecting substantial rights, this Court recently held that plain-error review does not apply to unpreserved issues in civil cases under Supreme Court precedent. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 5. Rather, plaintiff has waived this issue by failing to timely raise it in the trial court and is not entitled to relief. Accordingly, we decline to review this issue.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey

---

[9] Plaintiff contends that this issue is preserved because the trial court addressed this argument "de novo." It is well-established that, when considering a motion for reconsideration, a trial court has discretion to give a party a "second chance" to litigate issues already decided. *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). But plaintiff does not cite any legal authority supporting that a trial court's decision to give a party a "second chance" when considering a motion for reconsideration preserves the issue for appeal. This omission is particularly salient in light of caselaw clearly stating that an issue first presented in a motion for reconsideration is unpreserved. See *Vushaj*, 284 Mich App at 519. We accordingly conclude that plaintiff's failure to cite any legal authority supporting his position renders his argument abandoned. See *Prince*, 237 Mich App at 197.